# *Exhibit 7*



Writer's Direct Dial: 610-822-2209<br/>
E-Mail: ezagar@ktmc.com<br/>
*Please reply to the Radnor Office*

January 8, 2018

**VIA FEDEX**

James D. Wareham
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, DC 20006

  Re: **Stockholder Demand**

Dear Mr. Wareham:

  I write on behalf of my client Dr. Scott King (the "Stockholder") in response to your letter dated November 10, 2017 enclosing the Report and Recommendation of the Review Group of Under Armour Directors on the Demand Letter Submitted By Scott King (the "Report"). After reviewing the Report, the Stockholder has certain questions regarding the Review Group's investigation in connection with his demand letter dated May 25, 2017 (the "Demand").

  *First*, the "Key Findings" section of the Report notes that "[i]n early 2014, Plank, through an entity known as Sagamore Development Company ("Sagamore"), acquired a number of parcels around Port Covington." Report at 9. This finding overlooks a key fact noted in the Demand: that secret Port Covington real estate purchases by Plank/Sagamore occurred as early as 2012.[1] The Report's finding that Plank/Sagamore's purchases began "[i]n early 2014" also overlooks various news reports that have linked pre-2014 real estate transactions to Plank/Sagamore. *See, e.g.*, Kevin Litten, *Mystery developer behind Port Covington acquisitions is a Kevin Plank business partner*, BALTIMORE BUSINESS JOURNAL (June 10, 2014, 2:24 PM, updated June 10, 2014, 3:41 PM), http://www.bizjournals.com/baltimore/blog/real-estate/2014/06/myster-developer-behind-port-covington.html (noting that the Baltimore city planning department "was approached by Plank's representatives about building a whiskey distillery at Port Covington" which "concerned a 5.2-acre parcel acquired at auction in 2012 that was later linked to [Sagamore President Marc] Weller."). The Stockholder therefore requests that you explain how the Review Group determined that Plank's acquisition of Port Covington parcels did not occur prior to 2014.

---

[1] *See* Demand at 2 (citing a *Baltimore Sun* article that linked a 2012 Port Covington waterfront parcel purchase to Plank/Sagamore).

280 King of Prussia Road, Radnor, Pennsylvania 19087  T. 610-667-7706  F. 610-667-7056  info@ktmc.com
One Sansome Street, Suite 1850, San Francisco, California 94104  T. 415-400-3000  F. 415-400-3001  info@ktmc.com
WWW.KTMC.COM



James D. Wareham
January 8, 2018
Page 2



*Second*, the "Key Findings" section of the Report notes that "[a]lthough Plank discussed this vision [to transform Port Covington into a multi-use development], there is no evidence that Plank acquired these parcels [in the area] on the understanding that [Under Armour] would ultimately purchase the parcels from him." Report at 9. A finding of "no evidence" on this issue is concerning to Stockholder because other findings within the Report suggest that: (1) as early as 2014, Under Armour was contemplating moving its corporate headquarters to Port Covington; and (2) "but for" the presence of a Wal-Mart store at 2601 Port Covington, Under Armour would have purchased this parcel outright instead of leasing it from Sagamore/Plank (which it eventually did after Sagamore negotiated the lease buy-out with Wal-Mart). *See* Report at 10 ("Wal-Mart's continued presence at Port Covington would encumber [Under Armour's] plans to develop the site as a possible corporate headquarters, thus weighing against a purchase in 2014."). Such a finding is further perplexing because, on March 2, 2015, Plank himself stated that his Port Covington land purchases were intended to provide a new home for Under Armour's corporate headquarters. *See* Demand at 3 n.6.

Indeed, other news reports from March 2, 2015 revealed that Sagamore/Plank's Port Covington acquisitions arose after Plank's plans to further expand the Company's existing headquarters were rejected by the Baltimore Museum of Industry in 2012. *See* Kevin Litten, *How a deal gone wrong got Under Armour's Plank to start buying land at Port Covington,* BALTIMORE BUSINESS JOURNAL (Mar. 2, 2015, 7:22 PM, updated Mar. 2, 2015, 8:50 PM), http://www.bizjournals.com/baltimore/blog/real-estate/2015/03/how-a-deal-gone-wrong-got-under-armours-plant-to.html ("Under Armour Inc. CEO Kevin Plank's decision to pursue what's now a sprawling assemblage of property at Port Covington came after plans to expand the sportswear maker's campus along Key Highway were 'shot down' by the Baltimore Museum of Industry."); *see also* Natalie Sherman, , *Port Covington land is space for Under Armour to grow,* BALTIMORE SUN (Mar. 2, 2015, 9:42 PM), http://www.baltimoresun.com/sports/bs-bz-sagamore-plank-20150302-story.html ("Plank said he decided to go into real estate after being rebuffed by the board of the Baltimore Museum of Industry in 2012 when he proposed an expansion that would have included its Locust Point property. . . ."). The foregoing statements by Plank strongly indicate that he began acquiring the Port Covington parcels as early as 2012 with the specific intention for Under Armour to purchase those parcels for use as its new corporate headquarters.[2] Accordingly, the Stockholder requests that you explain how the Review Group determined that "there is no evidence that Plank acquired these parcels on the understanding that [Under Armour] would ultimately purchase the parcels from him."

*Third*, the "Key Findings" section of the Report notes that "[i]n early 2016, in considering where to move or expand the Company's corporate headquarters, both UA and the Audit Committee reviewed a number of different proposals. Port Covington emerged as an attractive

---

[2] In addition, news reports indicate that, in 2008, Plank and Under Armour contemplated acquiring land in Port Covington for use as the Company's new headquarters. *See, e.g.,* Daniel J. Sernovitz, *Under Armour eyes city site for HQ; West Covington may suit firm's growth, BDC says,* BALTIMORE BUSINESS JOURNAL (Jan. 28, 2008); Andrea K. Walker, *Under Armour plans for 'campus'; CEO Plank confirms desire for a larger presence in city,* BALTIMORE SUN (Apr. 26, 2008).



James D. Wareham
January 8, 2018
Page 3



candidate at the end of this process . . . ." The Report's finding that Under Armour and the Audit Committee were still considering Port Covington as a *potential* site for the Company's new headquarters in 2016 is perplexing because on September 16, 2015—months before "early 2016," when the Company and the Audit Committee were purportedly reviewing proposals—Plank made a presentation at the Company's investor day revealing Under Armour's new headquarters in Port Covington. *See* Sarah Meehan, *First renderings of new Under Armour campus emerge at Investor Day,* BALTIMORE BUSINESS JOURNAL (Sept. 17, 2015, 11:55 AM, updated Sept. 17, 2015, 12:09 AM), https://www.bizjournals.com/baltimore/blog/real-estate/2015/09/first-renderings-of-new-under-armour-campus-emerge.html. Notwithstanding Plank's earlier statements (discussed above), it appears that the decision to move Under Armour's corporate headquarters was made much earlier than the "early 2016" timeframe indicated in the Report. Accordingly, the Stockholder requests that you reconcile (a) the Report's statement that Under Armour and the Audit Committee were contemplating proposals in "early 2016" regarding its future corporate headquarters with (b) Plank's statements in March and September 2015 indicating that the decision to move Under Armour's headquarters to Port Covington had already been made.

*Fourth*, the "Key Findings" section of the Report notes that "[p]rior to 2014, Plank approached the Board to propose that the Company purchase land around Port Covington, in order to accommodate the Company's growing need for space," Report at 9, and the "Conclusions" section of the Report notes that "[t]he evidence . . . does not support a claim for usurpation of corporate opportunity [because] Plank presented the Board a proposal to purchase parcels surrounding Port Covington [and] the Board, exercising its business judgment, and in light of the risks presented, declined to do so," *id.* at 13-14. The Report fails to clarify whether (and if so, when) Plank informed the Board, Audit Committee and/or Company that he intended to move the Company's headquarters to Port Covington. Accordingly, the Stockholder requests that you specify (a) whether Plank, when making this purported "proposal," informed the Board that he intended to move Under Armour's corporate headquarters to Port Covington; and (b) precisely when Plank informed each of the Board, the Audit Committee and the Company that he intended to move Under Armour's corporate headquarters to Port Covington.

*Fifth*, Stockholder is concerned with the limited scope of the review conducted by the Review Group's counsel. As an initial matter, Stockholder is concerned by the Review Group's counsel's failure to review earlier Board and Audit Committee materials in light of the Report's own discussions of pre-2014 interactions between Plank and the Board. *See* Report at 9 ("Prior to 2014, Plank approached the Board to propose that the Company purchase land around Port Covington, in order to accommodate the Company's growing need for space."). Moreover, Stockholder notes that the Review Group's counsel only reviewed documents from Under Armour, not Sagamore or Plank (in his personal capacity or as a representative of Plank Industries or Sagamore). Given that Sagamore/Plank's Port Covington acquisitions were effectuated by Plank in his personal capacity (as the owner and controller of Sagamore and/or Plank Industries) and that a key aspect of the Stockholder's claims concern Sagamore/Plank's intended use of the Port Covington parcels, any reasonable investigation into the Demand would have sought documents from Sagamore, Plank Industries, and Plank. Relatedly, Stockholder was surprised to learn that the Review Group did not interview Sagamore President Marc Weller, an apparent key figure in Sagamore/Plank's acquisition of the Port Covington parcels and Sagamore/Plank's vision for the

James D. Wareham
January 8, 2018
Page 4



development of the area. *See* Demand at 2. Accordingly, the Stockholder requests that you explain why the Review Group's counsel did not request documents from Sagamore, Plank Industries, or Plank and did not interview Weller.

    I look forward to your response.

Sincerely,

KESSLER TOPAZ
MELTZER & CHECK, LLP

_____
Eric L. Zagar

ELZ/cmw

  cc:   Jeremy S. Friedman, Esq.